PROCESSED APPLES INSTITUTE, INC., & others[1] *vs.*
DEPARTMENT OF PUBLIC HEALTH & others.[2]

Suffolk. January 7, 1988. — May 16, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Public Health,* Pesticide, Federal standards. *Administrative Law,* Regulations. *Regulation. Department of Public Health.*

The Department of Public Health had authority, consonant with the mandate of G. L. c. 94, § 192, to establish tolerance levels for pesticide residues in certain foods more stringent than those established pursuant to comparable provisions of Federal law. [393-394]

The record of an action for declaratory and injunctive relief brought against the Department of Public Health did not support the plaintiffs' claim that the department's action in setting more stringent tolerance levels than those established pursuant to comparable Federal law for pesticide residue in certain foods was arbitrary or capricious. [395]

CIVIL ACTION commenced in the Superior Court Department on May 20, 1986.

The case was heard by *Haskell C. Freedman,* J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Kenneth W. Weinstein* of the District of Columbia (*Jeffrey B. Storer* with him) for the plaintiffs.

· *Thomas A. Barnico,* Assistant Attorney General, for the defendants.

LIACOS, J. In this action for declaratory and injunctive relief, the plaintiffs claim that: (1) the Federal government has estab-

[1] National Food Processors Association, Paul W. Bohne, III, International Apple Institute, and Uniroyal Chemical Company, Inc.

[2] Public Health Council and the Commissioner of Public Health.

lished a tolerance[3] for daminozide residue in processed apple products; (2) therefore, under G. L. c. 94, § 192 (1986 ed.), a State tolerance for daminozide residue in processed apple products is invalid in that it is more restrictive than the Federal tolerance; and (3) other provisions of State law do not abrogate the requirements of G. L. c. 94, § 192.[4] A judge of the Superior Court in Suffolk County ordered summary judgment for the defendants. The plaintiffs appeal. It is unnecessary to decide whether the Federal tolerance of twenty parts per million (ppm) of daminozide residue, established for raw apples pursuant to 21 U.S.C. § 346 a, by virtue of 21 U.S.C. § 342 (a) (2) (C) (1982), "passes through" to govern processed apple products. For the sake of argument, we assume that a Federal tolerance is established in this regard. We conclude, however, that under applicable State law the Department of Public Health (department) may establish tolerances more stringent than comparable Federal provisions.[5]

General Laws c. 94, § 192 (1986 ed.), provides in pertinent part that any standards, tolerances, and definitions of purity or quality or identity for food that the department adopts "shall *conform* to the standards, tolerances and definitions, if any, of purity or quality or identity" adopted for the enforcement of Federal law (emphasis added). In *American Grain Prods. Processing Inst.* v. *Department of Pub. Health,* 392 Mass. 309, 315 (1984), we held that, under this section, a Federal decision against setting a standard, tolerance, or definition for a

---

[3] A tolerance or action level is the maximum concentration of a substance allowed by law. See *American Grain Prods. Processing Inst.* v. *Department of Pub. Health,* 392 Mass. 309, 312 & 313 nn. 5 & 7 (1984); 21 U.S.C. § 346 (1982 & Supp. IV 1986).

[4] The issue of Federal preemption is not before this court. A single justice of the Appeals Court granted the plaintiffs' motion for voluntary dismissal without prejudice of the two counts concerning Federal law, on condition that the plaintiffs file a stipulation to stay related proceedings on those counts in the United States District Court until final disposition of the matter before us.

[5] Under 105 Code Mass. Regs. § 515.008 (1984) (effective October 1, 1986), the action levels for daminozide residues in heat processed apple sauce and juice products is 5 ppm, and in infant and baby foods it is 1 ppm.

particular chemical pesticide is not binding on the department. Indeed, an examination of c. 94 and of *American Grain Prods.*, *supra,* indicates that the over-all purpose of § 192 is to enable the department to conform its standards, tolerances, and definitions to *at least* the Federally established minimums. While Federal levels usually will provide a beacon, leeway is allowed for independent State determinations. Our review of the history of c. 94, § 192, revealed that the Legislature, in amending the provision in June, 1948, St. 1948, c. 598, § 6, intended to overrule the Attorney General's opinion "that it was the legislative intent that rules and regulations under § 192 should be for the purpose of implementing the Federal law referred to in § 192. Rep. A.G., Pub. Doc. No. 12, at 58 (1948)." *Id.* at 315. A State law simply mimicking existing Federal provisions would serve little purpose.

Section 186 of c. 94 buttresses our interpretation of § 192. This court has recognized already that these two sections should be construed harmoniously. *Id.* at 316-317. See *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health,* 379 Mass. 70, 76 (1979) (grants of detailed authority in various sections of G. L. c. 94 do not limit department's ability to deal with matters under more general provisions of the chapter). Consonant with the mandate in § 192 that the department shall "conform" its definitions to Federal law, § 186 nonetheless "does not limit its definition of adulterated food to food which is adulterated within the meaning of the Federal act." *American Grain Prods.*, *supra* at 317 n.12. The department may ban altogether a particular pesticide chemical although Federal law allows its use. *Id.* at 317. It would be illogical to construe these sections as permitting the department to ban completely a chemical pesticide which Federal law allows, while prohibiting it from setting more stringent regulations for use.

For the reasons stated above, we are unpersuaded by the plaintiffs' bald assertion that the stricter standards set for certain processed apple products are necessarily "nonconforming" within the meaning of the statute. "An agency, of course, has considerable leeway in interpreting a statute it is charged with enforcing." *Grocery Mfrs., supra* at 75, and cases cited.

Finally, the plaintiffs argue that this court need not decide whether, under c. 94, § 192, conformity always necessitates identity with Federal provisions because, so they claim, in the case at bar, the State action levels do not conform to Federal requisites under "any reasonable interpretation of § 192." To the extent this is an argument that the department's action levels are arbitrary or capricious, the record does not support the claim. See *American Grain Prods., supra* at 329, and cases cited (burden met only by proving absence of any conceivable ground to uphold rule).

*Judgment affirmed.*


LYNCH, J. (dissenting). The opinion of the court would have it appear that its logic and result are natural extensions of *American Grain Prods. Processing Inst.* v. *Department of Pub. Health,* 392 Mass. 309 (1984), because, "[i]t would be illogical to construe [G. L. c. 94, §§ 186, 192 (1986 ed.)] as permitting the department to ban completely a chemical pesticide which Federal law allows, while prohibiting it from setting more stringent regulations for use." *Ante* at 394. This reasoning obscures the critical distinction between the issue squarely posed by the instant case and the issue actually decided in *American Grain Prods., supra.* Here, the court decides the issue of whether a tolerance set by a State regulation, which is more stringent than a tolerance for the same substance set by Federal regulations, violates the legislative command that "[s]uch standards, tolerances and definitions shall conform to the standards, tolerances and definitions, if any . . . adopted for the enforcement of the federal food, drug and cosmetic act . . . ." G. L. c. 94, § 192. In contrast, the reasoning and holding of *American Grain Prods., supra,* rested on the explicit determination that there had not been an establishment of any Federal standard or tolerance. *Id.* at 313-316. Indeed, this critical distinction was apparent to the court then, and it should not be ignored now. "We believe, furthermore, that the two changes in the section show the aim of the Legislature to require

conformity *only* with Federal 'standards, tolerances and defi-nitions,' and not with any other kind of rule or regulation" (emphasis in original). *Id.* at 316.

*American Grain Prods., supra,* therefore, stands for the proposition that conformity is required between State and Federal standards and tolerances. Allowing State regulations 400% more restrictive than the Federal standards is to read the conformity requirement out of the statute. Once again, this court has not only taken another "step toward agency nonaccounta-bility and carte blanche," *id.* at 332 (Lynch, J., dissenting), but also now abdicates the judicial function of interpreting the scope of the only source of authority for agency action in this area. In the long run, this court's refusal to deal with issues concerning the legitimacy of agency decisionmaking can only undermine the legitimate authority accorded agencies by the Legislature. I, therefore, respectfully dissent.